```
                     UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Joachim S. Musekiwa,
     Plaintiff

     v.                                   Case No. 12-cv-120-SM
                                          Opinion No. 2013 DNH 099
American Airlines, Inc.,
     Defendant
```

**O R D E R**

Pro se plaintiff, Joachim Musekiwa, brings this defamation action against American Airlines, seeking $3 Million in compensatory damages. He says that when American denied his claim for compensation arising out of an allegedly lost piece of luggage, it wrongfully and maliciously suggested he was "a criminal who is connected to an illegal criminal scheme to falsify baggage [loss] claims." Complaint (document no. 1-1) at 1. American denies any liability and moves for summary judgment. For the reasons discussed, that motion is granted.


**Standard of Review**

When ruling on a motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record

reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted). Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party. See generally Fed. R. Civ. P. 56(c). It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore a party's bald assertions, unsupported conclusions, and mere speculation. See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997). See also Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different

stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## Background

On July 17, 2011, Musekiwa flew from London to Boston on a flight operated by American. When he arrived in Boston, he reported to the airline that he was unable to locate a piece of checked luggage. On August 8, 2011, he completed and submitted to American a "Property Questionnaire" (document no. 11-1), seeking compensation for approximately $1,300 in lost personal belongings. Among other things, that form asked: "Have you, or any member of your household, had a previous baggage claim with AA or any other airline?" Id. at 5 (emphasis supplied). Musekiwa replied, "yes," and reported that approximately 18 months earlier he made a claim with South African Airlines for lost baggage. He neglected, however, to disclose the fact that, only three months earlier, his daughter made a lost-baggage claim with Southwest Airlines for nearly $9,000.[1]

---

[1] On the claim form she submitted to Southwest Airlines, Musekiwa's daughter reported that her home address was the same as Musekiwa's - that is to say, they lived in the same "household."

During the course of its investigation, American discovered the daughter's claim with Southwest and realized that Musekiwa had not disclosed it.  Based on the fact that Musekiwa and another member of his household had made three claims for lost baggage within the prior 18 months, American decided to deny his claim, explaining:

> In our evaluation of this claim, it has been noted that there have been multiple instances of reported baggage problems with American and/or other airlines.  Some of these claims may have been reported by members of your family or others who reside in the same household.
>
> Since our experience has proved that multiple baggage losses or other problems which occur repeatedly to one individual or among members of the same household are extremely rare, we must respectfully decline to honor this current claim.  Like all claims adjustment agencies, we must carefully weigh all aspects of the validity of every claim submitted.

Letter from T. Townsend to Mr. Musekiwa, dated December 8, 2011 (document no. 11-1) at 11 (the "Denial Letter").

Musekiwa responded in a sternly-worded letter dated December 21, 2011.  In it, he took issue with American's decision to deny his claim, accused the airline of racial discrimination, and threatened litigation.  Id. at 12-13.  He also sent copies of that letter to the United States Department of Transportation, the Federal Aviation Administration, the Texas Attorney General, and the Better Business Bureau ("BBB") (it is, however, unclear

if he also provided those parties with copies of American's Denial Letter).

Shortly after receiving Musekiwa's letter, a representative of American contacted the BBB, explaining that its baggage policy was not influenced by racial or discriminatory preferences of any kind and noting that it would file a formal response to Musekiwa's allegations in due course.  That response came on January 24, 2012, in a letter addressed to Musekiwa (a copy of which was provided to the BBB).  In it, American said:

> Our manager in the American Airlines Central Baggage Service office has reviewed your suggestion that racism was a motive in the decision to deny your baggage claim.  He has concluded that your claim was denied because you failed to disclose previous baggage related claims with American and other carriers on the Property Questionnaire.  As you may recall, you signed our form specifically indicating that you had no prior baggage claims with American, however we discovered otherwise.  As such, your failure to disclose previous claim activity was the sole reason for our denial.  We are confident that discrimination played no part in our decision and we must emphatically deny the presence of any discriminatory intent in this matter.

Id. at 16.  Three days later, American sent Musekiwa a revised letter, correcting a factual misstatement in the original.  In relevant part, the revised letter provided:

> [The manager in the American Airlines Central Baggage Service office] has concluded however that your claim was initially denied because there was a failure to disclose a previous baggage related claim with a

>   particular carrier. The claim with another carrier appears to have been reported by another member of your family or someone who lives in your household.

Id. at 18. Despite its initial decision to deny Musekiwa's claim, American says that in the interest of maintaining good customer relations, it reversed course and decided to pay the claim in full. It notified him of that decision in the revised letter. He was issued a check for the full amount claimed ($1,297.94), which he acknowledges having cashed.[2]

Subsequently, it appears the BBB "closed" its file on this matter and removed any related materials that had been published to its website and available for public viewing - including Musekiwa's "complaint" in which he accused American of racial discrimination, as well as American's letters in response. Neither Musekiwa nor American obtained copies of those documents before the BBB removed them from public access.[3]

---

[2] In his various filings Musekiwa claims that, despite having received the full amount sought on his claim form, he is still owed nearly $800. But, the record is devoid of any evidence to support that claim. Musekiwa does, however, allude to a separate state court action he filed against American to recover the additional money he claims to be owed.

[3] Musekiwa's pro se filings are not entirely clear on this point, but it is possible he is claiming that, in addition to the letters it sent to him, American also authored some additional materials that were published on the BBB website. If such materials exist, he has failed to describe them, neglected to state how they might be construed as defamatory, and failed to provide copies of them. See Musekiwa deposition at 105, 109.

In February of 2012, Musekiwa filed a one-count writ in state court, alleging that American defamed him. American removed the action to this forum. Given Musekiwa's pro se status, it is not surprising that his complaint fails to articulate the precise basis for his claim. But, when asked at his deposition to explain why he believed American had defamed him, Musekiwa said:

> The fact that American Airlines said that I did not disclose [my daughter's prior lost baggage claim] on their property questionnaire. So the fact that I did not disclose it means that I was hiding something so that I could get some money from American Airlines. I would defraud the airline. I was hiding something.

Deposition of Joachim Musekiwa (document no. 11-2) at 112.

## Discussion

To prevail on his defamation claim, Musekiwa must demonstrate that American "failed to exercise reasonable care in publishing a <u>false and defamatory statement of fact</u> about the plaintiff to a third party, assuming no valid privilege applies to the communication." <u>Pierson v. Hubbard</u>, 147 N.H. 760, 763-64 (2002) (emphasis supplied). <u>See also</u> <u>Independent Mechanical Contractors v. Gordon T. Burke & Sons</u>, 138 N.H. 110, 118 (1993). A statement of fact is "defamatory" if it tends "to lower the plaintiff in the esteem of any substantial and respectable group,

7

even though it may be quite a small minority." Touma v. St. Mary's Bank, 142 N.H. 762, 765 (1998).

Importantly, however, "[a] statement is not actionable if it is substantially true." Simpkins v. Snow, 139 N.H. 735, 740 (1995). Moreover, under New Hampshire law, a conditional privilege exists "if the facts, although untrue, were published on a lawful occasion, in good faith, for a justifiable purpose, and with a belief, founded on reasonable grounds of its truth, provided that the statements are not made with actual malice." Id. (citations and internal punctuation omitted).

Here, the record establishes that Musekiwa simply cannot prevail on his defamation claim. First, the allegedly offensive statements made by American were all substantially true. In fact, Musekiwa concedes that he neglected to disclose the lost-baggage claim filed by his daughter. See Deposition of Joachim Musekiwa (document no. 11-2) at 29, 61, and 63. He also concedes that he should have disclosed that claim. Id. at 31. That Musekiwa has an explanation or even an excuse for having failed to share that information with American is immaterial to his defamation claim. The critical fact is this: American accurately stated that he failed to disclose a lost baggage claim filed by a

8

member of his household.  As a matter of law, then, that statement of fact is not actionable.

Nor does the implication of American's decision to deny Musekiwa's claim give rise to a viable defamation claim. Reasonably construed, American's statements to Musekiwa amount to something like the following: "based upon the number of claims made by you and members of your household in the recent past, and based upon our experience suggesting that such repeated claims are rare, we do not believe you."  The facts forming the basis of American's credibility determination are fully disclosed (and accurate).  Consequently, its view that Musekiwa's claim was invalid, even false, is an expression of opinion that is not actionable.

> The First Amendment does not inoculate all opinions against the ravages of defamation suits. A statement couched as an opinion that presents or implies the existence of facts which are capable of being proven true or false can be actionable. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-19 (1990); see also Restatement (Second) of Torts § 566 (1977) ("A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.").  Thus, a statement normally is not actionable unless it contains an objectively verifiable assertion.  Chief Judge Posner has captured the distinction between statements that are actionable and those that are not:
>
>> A statement of fact is not shielded from an action for defamation by being prefaced with

> the words 'in my opinion,' but if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.

Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 127-28 (1st Cir. 1997) (quoting Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1227 (7th Cir. 1993)) (footnotes omitted). See also Southern Ins. Co. of VA v Advanced Coatings, Inc., 2009 WL 4730495 (W.D.N.C. Dec. 4, 2009) (holding that insurer's claim denial letter, in which it informed insured that it was "investigating the possibility of misrepresentation on [its] original policy application" was an accurate statement of fact and, therefore, not defamatory); U.S.A. United Staffing Alliance v. Workers' Comp. Fund, 213 P.3d 20 (Utah App. 2009) (holding that insurer's statement that insured no longer had coverage because it had failed to pay premiums was an accurate statement of fact and, therefore, not defamatory).

Moreover, even if American's statements about the undisclosed claim filed by Musekiwa's daughter had been false, they likely would have been conditionally privileged, given the circumstances under which those statements were made and the fact that Musekiwa has pointed to nothing in the record which even remotely suggests that American acted with malice toward him.

10

See Simpkins, 139 N.H. at 740.  See generally Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 143 (D.N.H. 2005).  See also Guzhagin v. State Farm Mut. Auto. Ins. Co., 556 F. Supp. 2d 962 (D.Minn. 2008) (concluding, under governing state law, that an insurer's explanation for why it had denied insured's claim was subject to a qualified privilege and, therefore, not the basis of a viable defamation action).

## Conclusion

For the foregoing reasons, as well as those set forth in American's memoranda (documents no. 11 and 15), defendant's Motion for Summary Judgment (document no. 10) is granted.  To the extent plaintiff's pleading captioned "Motion to Dismiss Affidavit of Robert Fraga" (document no. 13) may properly be deemed a motion (rather than simply an objection to summary judgment), it is denied.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 18, 2013

11

cc: Joachim S. Musekiwa, pro se
    Edward P. O'Leary, Esq.